**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**CHRISTA M. ADYMY,**
Plaintiff,

v.                                                          Case No.: _____

**FIRST COMMUNITY INSURANCE**
**COMPANY,**
a Write-Your-Own carrier participating
in the National Flood Insurance
Program,

Defendant.

_____/

## COMPLAINT

COMES NOW the Plaintiff, CHRISTA M. ADYMY (hereinafter "Plaintiff"),

sues Defendant, FIRST COMMUNITY INSURANCE COMPANY (hereinafter

"Defendant"), and alleges as follows:

### I. JURISDICTION, VENUE, AND GOVERNING LAW

1. This is a civil action arising under the National Flood Insurance Act of 1968

    ("NFIA"), 42 U.S.C. § 4001 et seq., and the Standard Flood Insurance Policy

    ("SFIP") incorporated by federal regulation at 44 C.F.R. § 61.13 and

    Appendix A(1) to Part 61. *See Plaintiff's Notice of Filing – Exhibit A – Policy.*

2. This Court has original and exclusive jurisdiction over this action pursuant to 42 U.S.C. § 4072, which authorizes suit in the United States district court for the district in which the insured property was located when the loss occurred.

3. Venue lies in the Tampa Division of the Middle District of Florida because the insured property is located in Treasure Island, Pinellas County, Florida.

4. The policy at issue is not an ordinary private insurance contract. Rather, the SFIP is a codified federal form, and disputes arising under an SFIP are governed by federal law and federal common-law principles. *See* Studio Frames, Ltd. v. Standard Fire Ins. Co., 483 F.3d 239, 244–45 (4th Cir. 2007).

5. Defendant participated in the NFIP as a Write-Your-Own ("WYO") carrier and issued the subject SFIP as a fiscal agent of the United States pursuant to 44 C.F.R. § 62.23.

6. Because payments on SFIP claims are ultimately drawn from federal funds, courts require strict compliance with the policy and federal regulations. *See* Sanz v. U.S. Sec. Ins. Co., 328 F.3d 1314, 1317–20 (11th Cir. 2003).

7. A suit against a WYO carrier under an SFIP is, for jurisdictional and immunity purposes, the functional equivalent of a suit against FEMA. *See* Newton v. Capital Assurance Co., 245 F.3d 1306, 1309–12 (11th Cir. 2001).

8. Under Article VII(O) of the SFIP, an insured must file any suit within one year after the date of the written denial of all or part of the claim, and the one-

*AI assisted in the drafting of this document.*

year deadline applies to any claim under the policy and to any dispute arising out of the handling of any claim under the policy. 44 C.F.R. pt. 61, App. A(1), art. VII(O).

9. The operative limitations deadline in this matter is April 7, 2026, calculated from the April 7, 2025, written denial/partial denial identified in the claim file and the client communications previously reviewed by counsel.

## II. THE PARTIES

10. Plaintiff is an individual resident of the State of Florida and the named insured under the SFIP described below.

11. Defendant FIRST COMMUNITY INSURANCE COMPANY is, upon information and belief, the WYO carrier that issued the subject SFIP and/or administered the SFIP claim at issue through Bankers Insurance personnel and correspondence.

## III. THE SUBJECT POLICY

12. At all material times, Plaintiff was insured under SFIP Policy No. 09-6820308288-04, (See Exhibit A), covering the residential property located at 295 115th Avenue, Treasure Island, Florida 33706 (the "Property").

13. The SFIP provided, at minimum, Building Property coverage in the amount of $197,000 and Personal Property coverage in the amount of $15,000.

*AI assisted in the drafting of this document.*

14. Under Coverage A of the SFIP, Defendant insured the building against direct physical loss by or from flood.

15. The Dwelling Form expressly includes among covered building property "[f]ootings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building." 44 C.F.R. pt. 61, App. A(1), art. III.A.1.a.(17).

16. The SFIP also provides Coverage D—Increased Cost of Compliance ("ICC"), which pays up to $30,000 for the increased cost to elevate, relocate, demolish, or floodproof a flood-damaged building when required by applicable state or local floodplain-management law or ordinance. Id. art. III.D.1, 4.

17. Coverage D is in addition to the amount of Building Property coverage selected on the declarations page, subject to the statutory maximum. Id. art. III.D.1.

18. The deductible does not apply to Coverage D—ICC. Id. art. VII.V.C.3.

19. The SFIP requires an insured to submit a sworn proof of loss stating the amount claimed and the supporting information required by Article VII(G). Id. art. VII.G.4–5, (see Exhibit C1-C2).

20. Although an adjuster may furnish a proof-of-loss form as a courtesy, the SFIP expressly states that the insured remains obligated to submit a proof of loss

*AI assisted in the drafting of this document.*

even if the adjuster does not furnish the form or help complete it. Id. art. VII.G.7.

21. The SFIP further provides that, if the insurer rejects a proof of loss in whole or in part, the insured may accept the denial, exercise rights under the policy, or file an amended proof of loss if timely. Id. art. VII.J.2.

## IV. THE FLOOD LOSS

21. On or about September 26, 2024, during Hurricane Helene, the Property sustained direct physical loss by or from flood.

22. The flood waters caused catastrophic damage to the residence, including extensive damage to structural and foundational components.

23. The claim materials reflect that the Property later suffered a separate fire loss in 2024; however, the fire claim was handled separately and has been resolved. The fire claim is not the subject of this action.

24. The flood portion of the loss was substantial, catastrophic, and independently sufficient to exhaust the available building limits under the SFIP.

25. The City of Treasure Island issued a substantial-damage determination dated February 21, 2025, concluding that the Property sustained substantial damage caused by flood and could not be repaired and reused as an existing structure without compliance with current floodplain-management requirements.

*AI assisted in the drafting of this document.*

26. The municipal record, as described in the claim materials, characterized the flood damage as 100% substantial damage and confirmed that the existing foundation and structural system could not be reused for code-compliant reconstruction.

27. The municipal substantial-damage determination triggered the insured's entitlement to pursue ICC benefits under Coverage D of the SFIP.

## V. PRESENTATION OF THE CLAIM AND INITIAL ADJUSTMENT

28. Plaintiff timely reported the flood loss to Defendant and cooperated with the claim investigation.

29. Defendant investigated the claim and eventually paid approximately $123,665.69 in flood building proceeds.

30. Defendant also took the position that certain slab, foundation, and related structural components were not payable under the SFIP, invoking an "earth movement" or similar exclusionary rationale.

31. Defendant limited the building payment based on a narrower flood-depth/scope determination than the valuation advanced by Plaintiff and Plaintiff's supporting experts.

32. By April 7, 2025, Defendant had issued a written denial and/or partial denial sufficient to trigger the one-year federal suit period under 42 U.S.C. § 4072 and Article VII(O) of the SFIP.

*AI assisted in the drafting of this document.*

## VI. FEMA APPEAL AND FEMA'S AUGUST 25, 2025 DECISION

33. Plaintiff appealed Defendant's handling of the flood claim to FEMA under the NFIP administrative appeal process.

34. On or about August 25, 2025, FEMA issued a final appeal decision in FEMA Appeal No. 202519778.

35. According to the claim materials reviewed by counsel, FEMA overturned Defendant's prior denial and directed Defendant to re-evaluate the claim under the proper SFIP framework.

36. FEMA also determined that Defendant's prior handling and valuation approach were deficient and required correction.

37. Plaintiff and counsel have consistently treated the August 25, 2025, FEMA decision as favorable to the insured and as establishing that Defendant's previous adjustment was not compliant with the SFIP.

38. At the same time, the file reflects that FEMA's decision did not toll, extend, or reset the one-year suit period running from the prior written denial, and the claim materials expressly acknowledge the continuing April 7, 2026, deadline.

39. Following FEMA's favorable decision, Defendant did not tender the remaining building limits and did not pay the ICC benefits claimed by

*AI assisted in the drafting of this document.*

Plaintiff. *See Plaintiff's Notice of Filing – Exhibit B – FEMA Appeal Decision Letter dated August 25, 2025.*

## VII. PLAINTIFF'S POST-APPEAL SUBMISSIONS

40. After FEMA's favorable appeal determination, Plaintiff submitted a corrected and signed proof of loss for the building claim and supporting documentation demanding payment up to the available building limits.

41. On September 12, 2025, Plaintiff transmitted a post-appeal Proof of Loss package identifying the Property, the policy number, the FEMA appeal number, and the basis for her contention that the covered flood loss exceeded policy limits. *See Plaintiff's Notice of Filing – Exhibit C1 – Proof of Loss Increased Cost of Compliance Form.*

42. In that post-appeal package, Plaintiff asserted that the controlling independent appraisal valued the flood loss at Replacement Cost Value of $523,466 and Actual Cash Value of $383,085, and expressly included the foundation and structural systems within the flood valuation.

43. Plaintiff's September 12, 2025, materials demanded, among other things, correction of the proof of loss to match the independent appraisal line-by-line, payment of the building policy limits less deductible, and processing of ICC coverage.

*\*AI assisted in the drafting of this document.*

44. Plaintiff's post-appeal materials also included or referenced the City of Treasure Island's substantial-damage determination and other engineering, soil, planning, builder, and municipal materials supporting the non-reusability of the foundation and existing structural components.

45. On September 17, 2025, Defendant transmitted correspondence and an undisputed payment approval, to which Plaintiff responded on September 18, 2025, expressly disputing Defendant's treatment of the proof of loss and scope of damage.

46. Plaintiff continued to submit additional support on September 19, 2025, September 23, 2025, September 25, 2025, and thereafter, including detailed responses to Defendant's contentions concerning the foundation, engineering documentation, municipal evidence, and the claimed need for additional materials.

47. Those communications repeatedly emphasized that the City had issued a substantial-damage determination; that the independent appraisal valued the flood loss above policy limits; that the foundation and structural components could not lawfully be reused; and that Defendant was under a duty to adjust the claim consistent with FEMA's appeal decision. *See Plaintiff's Notice of Filing – Exhibit C2 – Proof of Loss Building and Contents.*

## VIII. THE INDEPENDENT APPRAISAL AND SCOPE DISPUTE

*AI assisted in the drafting of this document.*

48. Plaintiff obtained an independent valuation from a state-certified real estate appraiser, identified in the file as the Staebler appraisal.

49. The Staebler appraisal valued the flood damage at approximately $523,466 on an RCV basis and approximately $383,085 on an ACV basis.

50. The claim materials state that the appraisal included the building from foundation to roof and treated the foundation, slab, and structural systems as part of the flood loss.

51. Plaintiff contends the appraisal separated flood damage from site improvements and non-covered items, and that Defendant nevertheless continued to exclude or underpay covered foundational and structural losses.

52. Plaintiff further contends that Defendant's post-appeal "final" estimate or "Final Appeal Report" materially undervalued the flood loss by excluding or minimizing covered structural components and by failing to reconcile the scope with FEMA's decision and the municipal record.

53. Plaintiff asserts that the flood loss to the insured building exceeded the available policy limits even on an ACV basis, making the unpaid building amount a policy-limits dispute rather than a below-limits valuation dispute.

## IX. ICC BENEFITS

54. The SFIP's Coverage D—ICC provides up to $30,000 for increased costs to elevate, relocate, demolish, or floodproof a flood-damaged building when

*AI assisted in the drafting of this document.*

current state or local floodplain-management laws or ordinances require such compliance.

55. The eCFR version of the SFIP confirms that Coverage D applies when a building insured under Coverage A sustains a flood loss and the increased cost is caused by the enforcement of current state or local floodplain-management ordinances or laws. 44 C.F.R. pt. 61, App. A(1), art. III.D.4.a.

56. Plaintiff's claim file reflects a municipal substantial-damage determination, which is the type of governmental action that commonly triggers ICC eligibility under the SFIP framework.

57. Plaintiff repeatedly demanded ICC activation and assignment of an ICC adjuster or coordinator, asserting that the necessary substantial-damage and supporting documentation had already been provided.

58. Defendant responded by providing ICC checklists and insisting that Plaintiff submit a separate sworn ICC proof of loss and supporting items before ICC would be evaluated.

59. The file reflects that Plaintiff submitted a separate sworn ICC proof of loss on or about February 9, 2026, together with a consolidated administrative record and supporting materials.

*AI assisted in the drafting of this document.*

60. Plaintiff thereafter continued to demand ICC activation and payment, while Defendant maintained that required ICC materials were still missing or insufficient.

61. Plaintiff contends that the necessary ICC prerequisites were satisfied, that Defendant delayed and frustrated the ICC process, and that Defendant failed to timely evaluate and pay the ICC amount owed under the policy.

*AI assisted in the drafting of this document.*

## X. CONDITIONS PRECEDENT

62. Plaintiff has performed all conditions precedent to filing suit or such conditions have been satisfied, waived, excused, constructively fulfilled, or rendered futile by Defendant's conduct to the fullest extent allowed by federal law.

63. Plaintiff timely reported the loss, cooperated with the adjustment process, participated in the FEMA appeal process, and submitted sworn proof-of-loss materials for the building claim.

64. Plaintiff also submitted a separate sworn ICC proof of loss and repeatedly requested written identification of any remaining deficiencies.

65. To the extent Defendant contends any further itemization, plan, specification, receipt, or supporting material was required, Plaintiff alleges that she provided extensive supporting materials and that Defendant's shifting or repetitive documentation demands did not extinguish Defendant's duty to adjust and pay the covered loss under the SFIP.

66. Plaintiff further alleges that, after receipt of the signed and sworn proof-of-loss materials, Defendant did not lawfully tender the remaining undisputed amounts owed under the SFIP, and instead continued to stand on a narrowed scope and nonpayment position.

*AI assisted in the drafting of this document.*

## XI. BREACH AS TO BUILDING COVERAGE

67. Plaintiff sustained direct physical loss by or from flood to insured building property at the Property.

68. The covered flood loss to the building exceeded the available Coverage A limits of $197,000.

69. Defendant paid only approximately $123,665.69 in building proceeds, leaving approximately $73,334.31 in unpaid building benefits due and owing, exclusive of any corrections that may be required after final accounting.

70. Defendant materially breached the SFIP by failing to pay the full amount due under Coverage A after receipt of the claim, Plaintiff's proof-of-loss materials, the favorable FEMA appeal ruling, and the extensive supporting documentation establishing that the covered flood loss exceeded policy limits.

71. Defendant's asserted reliance on an exclusionary or non-covered characterization of slab, foundation, and related structural losses was inconsistent with Plaintiff's evidence, inconsistent with the municipal substantial-damage determination, and inconsistent with the SFIP's express inclusion of foundations and anchorage systems within covered building property when damaged by flood.

72. By failing to issue payment of the remaining building limits and by continuing to maintain an unduly narrowed scope notwithstanding FEMA's post-appeal

*AI assisted in the drafting of this document.*

directive to re-evaluate the claim properly, Defendant breached the SFIP and damaged Plaintiff.

## XII. BREACH AS TO ICC COVERAGE

73. The Property was insured under Coverage A and therefore qualified for the availability of Coverage D—ICC under the SFIP.

74. The municipal substantial-damage determination and the need to demolish, elevate, relocate, or otherwise bring the flood-damaged building into compliance with current floodplain-management requirements gave rise to an ICC claim under the SFIP.

75. Plaintiff submitted a sworn ICC proof of loss on or about February 9, 2026, and continued to provide supporting material and requests for ICC activation thereafter.

76. Despite these submissions, Defendant failed and refused to timely activate, adjust, and pay ICC benefits owed under the policy.

77. Plaintiff has been damaged by Defendant's failure to pay the ICC amount of up to $30,000 due under Coverage D, or such lesser or greater amount as the evidence may show is contractually payable under the SFIP and the governing federal regulations.

*AI assisted in the drafting of this document.*

## XIII. LIMITATIONS PERIOD AND TIMELINESS OF THIS ACTION

78. This action is timely because it is being filed on or before April 7, 2026, which is within one year of the April 7, 2025, written denial/partial denial reflected in the claim materials.

79. Plaintiff files this action notwithstanding her repeated efforts to resolve the matter without litigation, including the FEMA appeal and the extensive post-appeal exchanges with Defendant.

80. Plaintiff specifically alleges that the FEMA appeal and post-appeal communications did not waive or extend the one-year suit limitation, and this Complaint is filed to preserve Plaintiff's contractual and statutory rights under 42 U.S.C. § 4072 and Article VII(O) of the SFIP.

## COUNT I – BREACH OF CONTRACT (COVERAGE A – BUILDING PROPERTY)

81. Plaintiff re-alleges and incorporates Paragraphs 1 through 59 as if fully set forth herein.

82. The SFIP constitutes a binding contract between Plaintiff and Defendant.

83. Plaintiff suffered direct physical loss by or from flood to insured building property at the Property.

84. Plaintiff complied with the SFIP's applicable conditions precedent, including the presentation of the loss and submission of sworn proof-of-loss materials.

*AI assisted in the drafting of this document.*

85. Defendant breached the SFIP by failing to pay the full amount of building benefits due under Coverage A.

86. As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in the amount of the unpaid building benefits, presently estimated at approximately $73,334.31, plus any other contract damages properly recoverable under federal law.

## COUNT II – BREACH OF CONTRACT (COVERAGE D – INCREASED COST OF COMPLIANCE)

87. Plaintiff re-alleges and incorporates Paragraphs 1 through 65 as if fully set forth herein.

88. The SFIP provides separate ICC benefits of up to $30,000 when a flood-damaged building must be elevated, relocated, demolished, or otherwise brought into compliance with current floodplain-management ordinances or laws.

89. Plaintiff's Property was the subject of a municipal substantial-damage determination sufficient to trigger the pursuit of ICC benefits under the SFIP framework.

90. Plaintiff submitted a sworn ICC proof of loss and supporting materials and repeatedly demanded activation and payment of ICC benefits.

91. Defendant breached the SFIP by failing to timely evaluate and pay the ICC claim.

*AI assisted in the drafting of this document.*

92. As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in the amount of unpaid ICC benefits, presently estimated at approximately $30,000, or such amount as the evidence will show is payable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant and award: (a) all unpaid Coverage A—Building Property benefits due under the SFIP; (b) all unpaid Coverage D—ICC benefits due under the SFIP; (c) taxable costs as allowed by law; and (d) such other and further relief as the Court deems just and proper within the limits of federal sovereign-immunity principles applicable to SFIP litigation.

## DEMAND FOR TRIAL

WHEREFORE, Plaintiff requests trial before the Court. Plaintiff does not demand a jury trial because this SFIP action against a WYO carrier is treated as the functional equivalent of a suit against FEMA, and the governing authorities recognize no jury-trial right in this context. *See* Newton, 245 F.3d at 1309–12.

DATED: *April 7, 2026*

Respectfully submitted,
*Candice Rojas-Colucci, Esq.*
COLUCCI LAW GROUP PLLC
5590 Ulmerton Rd.
Clearwater, FL 33760
727-733-9438
candice@coluccilawgroup.com
kellie@coluccilawgroup.com
kayla@coluccilawgroup.com

*\*AI assisted in the drafting of this document.*